IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

Britney Nicole Turner,                    )
                                          )
              Plaintiff,                  )
                                          )        C.A. No. 7:09-cv-02858-JMC
       v.                                 )
                                          )        **ORDER AND OPINION**
Sheriff David Taylor, Union               )
County, James Owens and the               )
City of Jonesville,                       )
                                          )
              Defendant.                  )
                                          )
_____ )


This matter is before the court on Defendant Town of Jonesville's ("Town of Jonesville")
Motion for Summary Judgment [Doc. 48].[1]  Based on the record before this court, Town of
Jonesville's motion is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

On the evening of May 20, 2009, Officer James Owens ("Officer Owens"), a patrol
officer employed by the Town of Jonesville Police Department, observed Plaintiff Britney
Nicole Turner ("Plaintiff") driving her car, along with her passenger Frances Louise Zelarno
("Zelarno"), with one of its front headlights out and initiated a traffic stop.[2] [Doc. 48-2, at 19, ll.
14-16]; [Doc. 48-2, at 20, ll. 3-11]; [Doc. 48-3, at 8, ll. 1-12.  Plaintiff admitted that she had
been stopped on four prior consecutive days for driving without a headlight.  [Doc. 48-2, at 15,

---

[1] Although this case's caption includes the "City of Jonesville" as a Defendant, in its Motion for
Summary Judgment Defendant refers to itself as the "Town of Jonesville."
[2] Frances Louise Zalerno has filed a companion case to the instant action.  *See Frances Louise
Zalerno v. Sheriff David Taylor, Union County, James Owens and the City of Jonesville*, C.A.
No. 7:09-cv-02860-JMC.

ll. 15 – 17, ll. 2]; [Doc. 48-4, at 20, ll. 15 – 21, ll. 2]; [Doc. 48-5, at 31, ll. 27-20].  However, Plaintiff did not fix her headlight, and it remained broken on May 20, 2009, when she and Zelarno left her home. [Doc. 48-3, at 7, ll. 16 – 8, ll. 12].  Plaintiff admitted that she knew it was against the law to drive without a headlight and that she had no problem being stopped yet again. [Doc. 48-3, at 8, ll. 13-18]; [Doc. 48-3, at 9, ll. 6-8]; [Doc. 48-3, at 49, ll. 18-22].  Just before pulling Plaintiff over, Officer Owens observed Zelarno throw a cigarette out of the car window. [Doc. 48-4, at 23, ll. 6-15].

Plaintiff and Zelarno admit that Officer Owens advised Plaintiff that he smelled alcohol coming from the car. [Doc. 48-2, at 24, ll. 18-21]; [Doc. 48-4, at 24, ll. 15-18].  Both Plaintiff and Zelarno admit that Plaintiff consented to a search of her vehicle upon request by Officer Owens. [Doc. 48-2, at 24, ll. 18-21]; [Doc. 48-4, at 24, ll. 15-18]. After consent, Officer Owens searched the vehicle and then used his police dog to sniff the vehicle for drugs.  [Doc. 48-2, at 25, ll. 1-12]; [Doc. 48-3, at 18, ll. 2-24]; [Doc. 48-3, at 20, ll. 12-18]; [Doc. 48-4, at 26, ll. 1-24]; [Doc. 48-5, at 27, ll. 3-20].  Zelarno testified that Officer Owens showed Plaintiff some marijuana stems and seeds he found in the car.  [Doc. 48-4, at 29, ll. 21 – 30, ll. 22]; [Doc. 48-5, at 25, ll. 14 – 26, ll. 3].[3]

When Officer Owens called for back-up, a deputy employed by the Union County Sheriff's Office responded.  [Doc. 48-2, at 26, ll. 16-19]; [Doc. 48-3, at 23, ll. 10-14]; [Doc. 48-

---

[3]  Plaintiff admitted that she smoked marijuana once a month but was not smoking often at the time of this incident. [Doc. 48-3, at 4, 19-23]; [Doc. 48-5, at 19, ll. 24 – 20, ll. 12]. Zelarno admitted being a "pothead" and smoking six "blunts" a day. [Doc. 48-5, at 19, ll. 2-6].  Zelarno also admitted selling marijuana. [Doc. 48-5, at 19, ll. 17-23]. Despite this, both denied smoking marijuana on May 20, 2009 before their evening excursion. [Doc. 48-2, at 21, ll. 4-7, ll. 18-25]; [Doc. 48-2, at 22, ll. 1-7, ll. 12-14]; [Doc. 48-4, at 21, ll. 19-21]; [Doc. 48-5, at 37, ll. 9-12].

4, at 28, ll. 16-23].  The officer assisted in a search of the vehicle.  [Doc. 48-2, at 26, ll. 21-24]; [Doc. 48-4, at 28, ll. 20-23].  Officer Owens, apparently believing that Plaintiff or Zelarno may have hidden drugs on their bodies, requested that a female officer come to the scene to conduct a search of Plaintiff and Zelarno.  [Doc. 48-2, at 26, ll. 25 – 27, ll. 4]; [Doc. 48-4, at 29, ll. 4-20].

A female detention officer employed by the Union County Sheriff's office responded.  [Doc. 48-2, at 27, ll. 25 – 28, ll. 9]; [Doc. 48-4, at 29, ll. 4-20].  She took Plaintiff to the side of her patrol car away from the road and searched her in between the open passenger's side door and rear door.  [Doc. 48-2, at 27, ll. 21-23]; [Doc. 48-2, at 29, ll. 9-23]; [Doc. 48-4, at 31, ll. 2 – 32, ll. 7].  She conducted searches of Plaintiff by asking her to hold out and shake her bra, unhook her bra, pull down her panties, cough, squat, and bounce.  [Doc. 48-2, at 27, ll. 25 – 28, ll. 8]; [Doc. 48-2, at 29, ll. 9-23]; [Doc. 48-3, at 24, ll. 24 – 25, ll. 12]; [Doc. 48-4, at 31, ll. 13-24]; [Doc. 48-4, at 34, ll. 16 – 35, ll. 1].  The record does not reveal nor does Plaintiff point to evidence that the male officers or other individuals could observe this search conducted behind the patrol car.  Zelarno was searched by the female officer in the same manner.  [Doc. 48-2, at 36, ll. 17-22 – 37, ll. 18-24]; [Doc. 48-3, at 29, ll. 6-16]; [Doc. 48-4, at 37, ll. 11 – 38, ll. 15].  No drugs were found.

Officer Owens gave Plaintiff a warning for the headlight and gave Zelarno a ticket for throwing a cigarette out of Plaintiffs' car.  [Doc. 48-2, at 35, ll. 22 – 36, ll. 14]; [Doc. 48-4, at 41, ll. 14-18].  When Plaintiff's car would not start, Officer Owens assisted in jumpstarting her vehicle. Thereafter, Plaintiff and Zelarno left the scene.  [Doc. 48-2, at 35, ll. 6-21]; [Doc. 48-4, at 41, ll. 19 – 42, ll. 12].

After the stop, Plaintiff and Zelarno went to a nearby convenience store. [Doc. 48-2, at 38, ll. 15-17]; [Doc. 48-2, at 40, ll. 1-18]; [Doc. 48-4, at 43, ll. 12 – 44, ll. 6]. Thereafter, Officer Owens came to the store and approached Plaintiff and Zelarno with a half of a marijuana cigarette indicating that he had found it under his car after they left. [Doc. 48-2, at 40, ll. 20 – 41, ll. 14]; [Doc. 48-4, at 44, ll. 11 – 45, ll. 6]. Plaintiff and Zelarno denied that the marijuana was theirs. [Doc. 48-2, at 41, ll. 18-23]; [Doc. 48-5, at 2, ll. 6].

Plaintiff filed her Complaint on November 2, 2009. [Doc. 1]. The Town of Jonesville filed its Answer [Doc. 12] on December 1, 2009, and the instant Motion for Summary Judgment [Doc. 48] on September 1, 2010.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in

his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *See id* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## DISCUSSION

### I.    Plaintiff's 42 U.S.C. § 1983 Claim

Plaintiff's case primarily rests on her claims under 42 U.S.C. § 1983, the federal provision permitting a civil action for the deprivation of federally guaranteed rights.  Section 1983 allows a citizen, or other person within the jurisdiction of the United States, to bring suit against any person acting under the color of law, whether state or federal, for depriving her of rights secured by the United States Constitution. *See* 42 U.S.C. § 1983. This includes police officers employed by municipalities. *Monell v. Dept. of Soc. Serv. Of City of N.Y.*, 436 U.S. 658 (1978). To state a claim under section 1983, a plaintiff must allege 1) that a right secured by the constitution or laws of the United States has been violated, and 2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.    Plaintiff's Constitutional Allegations

Plaintiff asserts Owens performed an illegal strip search in violation of her Fourth, Fifth, Sixth, Seventh, Eighth, Fourteenth, and Twenty-fourth Amendment rights of the United States Constitution. Thus, the issue is whether the Town of Jonesville violated Plaintiff's rights under these Amendments.

Given Plaintiff's focus on the strip searches, the right at issue here is that protected by the Fourth Amendment, the right to protection against unreasonable search and seizures. *See* U.S. Const. amend IV. The other Amendments (Fifth, Sixth, Seventh, Eighth, and Twenty-fourth) are irrelevant, inapplicable to the facts alleged, and should be disregarded; the court's analysis is directed to the Fourth Amendment.[4]

The Fourth Amendment prevents unreasonable searches of "persons, houses, papers, and effects." U.S. Const. amend. IV. "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." *Schmerber v. State of California*, 384 U.S. 757, 767 (1966). The Fourth Amendment essentially extends the federal right of due process to state and local levels of government, and it is the vehicle through which the procedural and substantive requirements of due process are applied to state and local governments. *See* U.S. Const. Amend. XIV, § 2; *see also Hallinger v. Davis*, 146 U.S. 314, 320 (1893).

---

[4] The Fifth Amendment protects persons against prosecution of particular crimes without indictment, double-jeopardy, self-incrimination, and the deprivation of life, liberty or property without due process. *See* U.S. Const. amend. V. The Sixth Amendment speaks to the right to a speedy trial, trial by jury, being advised of charges, confrontation of witnesses, and assistance of counsel. *See* U.S. Const. amend. VI. The Seventh Amendment further protects the right to a trial by jury in certain instances. *See* U.S. Const. amend. VII. The Eighth Amendment prevents cruel and unusual punishment. *See* U.S. Const. amend. VIII. The Twenty-fourth Amendment speaks to poll taxes and the right to vote. *See* U.S. Const. amend. XXIV.

Although an arbitrary deprivation of an individual's life, liberty, or property may violate a citizen's right to due process of law, to establish a violation of the Fourteenth Amendment, Plaintiff must show that the Town of Jonesville was deliberately indifferent to her constitutional rights and engaged in conduct which "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). To establish that governmental conduct shocks the conscience, Plaintiff must show that the government acts at issue must be deliberate, rather than merely negligent. *See Collins v. City of Harker Heights*, 503 U.S. 115, 127 n.10 (1992). With respect to personal searches, only the most "extreme or patently abusive searches" have been held to violate the Due Process Clause of the Fourteenth Amendment. *United States v. Robinson*, 414 U.S. 218, 236 (1973) (citing *Rochin v. California*, 342 U.S. 165 (1952)).

Again, the record indicates that Officer Owens stopped Plaintiff because one of her headlights on her car was out. Before the stop, he observed Zelarno throwing a cigarette out of the car. Once he began questioning Plaintiff and Zelarno, he indicated that he smelled alcohol and that he wanted to conduct a search of Plaintiff's car. Plaintiff consented to his request. He personally conducted the search and enlisted the assistance of an additional officer and a police dog. The search turned up some marijuana stems and seeds. Officer Owens then requested that a female officer conduct a strip search of Plaintiff and Zelarno. The strip search uncovered no contraband. Yet despite this series of events, the court has not discerned nor has Plaintiff, as the non-moving party, "demonstrate[d] that specific, material facts exist which give rise to a genuine issue" concerning whether the Town of Jonesville acted deliberately to deny Plaintiff her right to due process of law. *See Celotex Corp.*, 477 U.S. at 324. Nor is there evidence that the Town of Jonesville had knowledge that its administration of criminal justice resulted in the deprivation of the constitutional rights of its citizens. The record does not indicate that the instant facts are an

example of the type of "extreme or patently abusive searches" which have been held to run afoul

of the Fourteenth Amendment. *See Robinson*, 414 U.S. at 236. Accordingly, the Town of

Jonesville is entitled to summary judgment with respect to Plaintiff's claim for violation of the

Fourth and Fourteenth Amendments.

**B.      Plaintiff's Allegations Related to Town of Jonesville's Policies, Customs or Practices**

As the court understands Plaintiff's argument, Officer Owens had "absolutely nothing

that would cause" him to request that a strip search of Plaintiff and Zalerno be conducted. [Doc.

53, at 4].    In Plaintiff's view, the Town of Jonesville consequently violated Plaintiff's

constitutional rights because "there are no reprimands furnished to this Plaintiff that Officer

Owens was disciplined for his unconstitutional conduct toward this Plaintiff on May 20, 2009."

[Doc. 53, at 4].  In support of her arguments, Plaintiff presents cases involving strip searches of

public school students by school officials in which the searches did not yield evidence of drug

use.  *See e.g.*, *Bilbrey ex rel. Bilbrey v. Brown*, 738 F.2d 1462 (9th Cir. 1984); *see also*, *Safford

Unified School Dist. #1 v. Redding*, 129 S. Ct. 2633 (2009).  The court discerns the crux of

Plaintiff's argument to be that the Town of Jonesville is vicariously liable for Officer Owens's

acts.

A municipality such as the Town of Jonesville cannot be held liable under Section 1983

solely upon the theory of *respondeat superior* liability. *Monell*, 436 U.S. at 691. Instead,

Plaintiff must show that the "execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts

the injury . . . ." *Id.* at 695.  Thus, to establish liability, Plaintiff must establish that the Town of

Jonesville's policies caused her to be searched.  *See McMillian v. Monroe County*, 520 U.S. 781,

785-86 (1997).  Furthermore, a single act or isolated incident is not sufficient to hold the Town of Jonesville liable on the basis of "custom" or "usage." *See Jordan v. Jackson*, 15 F.3d 333, 341 (4th Cir. 1994).

Here, Plaintiff has identified no evidence that the officers violated any constitutional right of Plaintiff pursuant to any express policy, custom or practice of the Town of Jonesville relating to physical searches incident to a traffic stop. Similarly, there is no evidence that any final decision-maker of the Town promulgated any policy for conducting physical searches incident to a traffic stop.

Plaintiff alleges generally that some failure to train or supervise gives rise to liability here, but to the extent that Plaintiff may contend that the Town has failed to properly train its officers or that the Town has failed to supervise them, her claim is without merit. In *City of Canton v. Harris*, 489 U.S. 378, 387 (1989), the Supreme Court of the United States recognized that in limited situations, a municipality can be held liable for the failure to properly train its police officers. The Court held that the courts are ill-suited to second-guess municipal training programs and noted that in virtually every instance a 1983 plaintiff could point to something the municipality could have done differently.  *Id.* at 392.  Consequently, the Court adopted a stringent standard holding that a municipality may be held liable "only where the failure to train amounts to deliberate indifference to the rights of the person with whom the police come into contact." *Id.* at 388.

This court has recognized that "[t]here are two widely prevailing views regarding the imposition of municipal liability based on custom." *Nelson v. Strawn,* 897 F. Supp. 252, 259 (D.S.C. 1995). Under the first of these, Plaintiff must show that the Town of Jonesville's need to

train police officers in a certain area of the law - searches - is so obvious that its failure to do so would result in certain risk of violating the constitutional rights of its citizens. *See City of Canton*, 489 U.S. 378, 389; *Davis v. Mason County*, 927 F.2d 1473 (9th Cir. 1991); *Berry v. City of Muskogee*, 900 F.2d 1489, 1496-97 (10th Cir. 1990). Plaintiff must point to a specific deficiency in the training given to Officer Owens, and she must show that this lack of specific training in fact caused the alleged violation. *See City of Canton*, 489 U.S. at 391. ("Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?"); *Jordan v. Jackson*, 15 F.3d 333, 341 (4th Cir. 1994). Plaintiff has pointed to no evidence regarding the training given to officers regarding searches, and there is no evidence that any lack of alleged training of Officer Owens proximately caused a violation of her rights.

Under the second view, a plaintiff may show that if the need for training is not readily apparent, a pattern of constitutional violations has occurred constituting notice that there existed a deficiency in training. *See Cornfield v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1327 (7th Cir. 1993). Thus, Plaintiff must show that the Town of Jonesville was aware of the pattern of violations. *Id.* (citing *City of Canton*, 489 U.S. at 390 n.10). There is no evidence in this case of any pattern of physical searches following traffic stops or any evidence that the Town of Jonesville was aware of such pattern. Therefore, in accordance with *Jordan* and *Canton*, this single incident of alleged misconduct is not sufficient to impose liability on the Town of Jonesville.

The court also reads Plaintiff's complaint to allege that the Town of Jonesville failed to supervise Officer Owens. To impose liability upon the Town of Jonesville, Plaintiff must show that "there is a history of widespread abuse" such that the Town of Jonesville was deliberately

indifferent. *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983). There is no such evidence here. There is no evidence related to any prior searches conducted or initiated by Officer Owens and thus no evidence of deliberate indifference.

In this case, there is no evidence that the Town of Jonesville was deliberately indifferent to the rights of its residents. The record is devoid of evidence that Officer Owens was not properly trained regarding searches incident to traffic stops. The record is also devoid of evidence that Officer Owens asked Plaintiff to be searched because he was not properly supervised. In sum, there is no evidence that any constitutional right of Plaintiff was violated because of some policy or custom of the Town of Jonesville. Accordingly, it is entitled to summary judgment as a matter of law.

## II.    Plaintiff's Negligence Claim

Plaintiff argues that the Town of Jonesville would breach a duty owed to her if it negligently trained and/or instructed Officer Owens in strip searches and the constitutional guarantees associated with such bodily invasions. To establish liability in a negligence action, the claimant must show: (1) a duty of care owed by the defendant to the plaintiff; (2) breach of that duty; and (3) damages proximately resulting from the breach. *See Bishop v. South Carolina Dep't of Mental Health,* 331 S.C. 79, 88, 502 S.E.2d 78, 82 (1998). Statutes, contractual relationships, property interests, and other special circumstances may give rise to an affirmative legal duty to act. *See Madison ex rel. Bryant v. Babcock Ctr., Inc.,* 371 S.C. 123, 136, 638 S.E.2d 650, 656-57 (2006).  The South Carolina Tort Claims Act ("the Tort Claims Act" or "the Act") constitutes the exclusive civil remedy for any tort committed by a governmental employee while acting within the scope of the employee's official duties. *See* S.C.Code Ann. § 15-78-200 (2005).

The Tort Claims Act does not create causes of action, but removes the common law bar of governmental immunity. *Arthurs ex rel. Estate of Munn v. Aiken Cty.,* 346 S.C. 97, 105, 551 S.E.2d 579, 583 (2001). The Act is a "limited waiver of governmental immunity." *Steinke v. South Carolina Dep't of Labor, Licensing, and Regulation,* 336 S.C. 373, 393, 520 S.E.2d 142, 152 (1999) (citing *Moore v. Florence School Dist. No. 1*, 314 S.C. 335, 444 S.E.2d 498 (1994)). As a result of the foregoing law, the Town of Jonesville, according to Plaintiff, is liable to her for the acts perpetrated upon her by Officer Owens.

However, under South Carolina law, "[w]hen, and only when, the plaintiff relies upon a statute as creating the duty does a doctrine known as the 'public duty rule' come into play." *Arthurs ex rel. Estate of Munn,* 346 S.C. at 103, 551 S.E.2d at 582. Thus, in South Carolina, there is no duty owed by the police to individuals; rather, the police owe duties to the public at large. *Wyatt v. Fowler*, 326 S.C. 97, 101, 484 S.E.2d 590, 592 (1997). In *Wyatt*, the Supreme Court of South Carolina considered a negligence claim asserted against the Sheriff. *See id.*, 484 S.E.2d at 592. There, two sheriff's deputies entered Wyatt's residence at 5:30 pm while he was asleep looking for Allen Parrish for whom they had an arrest warrant. *See id.* at 99, 484 S.E.2d at 592. Wyatt awoke thinking that there was a burglary taking place, armed himself, and went to investigate. *See id.*, 484 S.E.2d at 592. The police drew weapons from their holsters. *See id.,* 484 S.E.2d at 592. When Wyatt approached the deputies, they identified themselves, and he provided proof he was not Parrish. *See id.*, 484 S.E.2d at 592. The deputies then left without further incident. *Id.* at 100, 484 S.E.2d at 592. Wyatt sued alleging negligence against the deputies and the Sheriff. *Id.*, 484 S.E.2d at 592.

The Supreme Court of South Carolina found that the trial court erred in failing to grant a directed verdict in favor of the Sheriff on the negligence claim. *Id.* at 100-101, 484 S.E.2d at

592. It adopted the view of other jurisdictions that police owe their duties to the public at large and not to individuals. *Id.*, 484 S.E.2d at 592.  For example, the Court relied on *Flones v. Dalman*, 199 Mich. App. 396, 403, 502 N.W.2d 725, 729 (Mich. App. 1993) in reaching its conclusion. *See Wyatt*, 326 S.C. at 101, 484 S.E.2d at 592.  In *Flones*, state troopers were investigating homosexual activity in highway restrooms and mistakenly identified and arrested Flones as a suspect.  *Id.* at 399, 502 N.W.2d 727.  The court rejected Flones' claim for negligence, finding that there was no legal duty as a matter of law. *Id.* at 403. The court held that "A police officer's duty to preserve the peace is owed to the public at large, not to any one individual . . . . Here, the defendant's duty to the public is to detect and investigate crime; no duty is owed to the plaintiffs as individuals." *Id.*; *See also Wimer v. Idaho*, 122 Idaho 923, 925, 841 P.2d 453, 455 (Idaho Ct. App. 1992) (finding that there is no cause of action against officers for negligent investigation).

In *Washington v. Lexington County Jail*, 337 S.C. 400, 406, 523 S.E.2d 204, 207 (Ct. App. 1999), the South Carolina Court of Appeals reiterated the South Carolina Supreme Court's holding in *Wyatt*. In *Washington,* the Court of Appeals found that police officers owe duties to the public at large and not to individuals. *Id.* at 406, 523 S.E.2d at 207. ("We find the situation of guards who maintain custody of inmates analogous to that of police officers who owe a duty generally to society rather than to any one individual. Accordingly, we hold that those who maintain custody of prisoners or inmates do so for the protection of the public and are, therefore, not liable to individuals for damages caused by an escaped inmate under the public duty rule").

Even if the Town of Jonesville owed Plaintiff a duty, there is no evidence of a breach of this duty. As discussed above, there is no evidence that the Town of Jonesville failed to properly train or supervise Officer Owens or that some specific lack of training caused him to request a

search of Plaintiff. Accordingly, the Town of Jonesville is entitled to summary judgment as a matter of law.

### III.    Plaintiff's Civil Conspiracy Claim

Plaintiff argues that there were actions on the part of Officer Owens, the county detention officer and the officer with the Union County Sheriff's Department that constitute civil conspiracy and deprived Plaintiff of her constitutional rights.  To establish her claim for civil conspiracy, Plaintiff must allege and prove: (1) A combination of two or more persons; (2) for the purpose of injuring her; and (3) which caused special damages.  *LaMotte v. Punchline of Columbia, Inc.*, 296 S.C. 66, 69, 370 S.E.2d 711 (1988).

There is no evidence to support Plaintiff's civil conspiracy claim against the Town of Jonesville. Contrary to Plaintiff's allegations, the evidence establishes that Officer Owens initiated the traffic stop of Plaintiff because she had a broken headlight and that he conducted a search of her vehicle with her consent.  [Doc. 48-2, at 19, ll. 14-16]; [Doc. 48-2, at 20, ll. 3-11]; [Doc. 48-2, at 24, ll. 18-21]; [Doc. 48-3, at 8, ll. 1-12]; [Doc. 48-3, at 17, ll. 10-13]; [Doc. 48-3, at 18, ll. 2-4]. The evidence further establishes that he called for backup and a Union County Sheriff's Deputy responded. He subsequently requested a female officer to search Plaintiff. [Doc. 48-2, at 26, ll. 16-25 – 27, ll. 4]; [Doc. 48-3, at 22, ll. 10-14]; [Doc. 48-4, at 28, ll. 1-6 – 29, ll. 4-20].   There is no evidence that these events unfolded in a preplanned manner or that these officers conspired with one another to injure Plaintiff.

In addition, there are no special damages claimed by Plaintiff. Special damages are damages that are claimed in addition to damages sought under other causes of action. *See Robinson v. Metts*, 86 F. Supp. 2d 557, 563 (D.S.C. 1997). The damages Plaintiff seeks for

conspiracy are the same as those sought under her other causes of action. Accordingly, Defendant Town of Jonesville is entitled to an order granting summary judgment with respect to Plaintiff's civil conspiracy claim.

## CONCLUSION

For the foregoing reasons, Defendant Town of Jonesville's Motion for Summary Judgment [Doc. 48] on Plaintiff's Fourth, Fifth, Sixth, Seventh, Eighth, Fourteenth and Twenty-fourth Amendment Claims; Plaintiff's Negligence claim; and Plaintiff's Civil Conspiracy claim is **GRANTED**.

**IT IS SO ORDERED**

s/ J. Michelle Childs
United States District Judge

August 16, 2011
Greenville, South Carolina

15