IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Britney Nicole Turner, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 7:09-cv-02858-JMC |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Sheriff David Taylor, Union ) | |
| County, James Owens and the ) | |
| City of Jonesville, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on Defendant James Owens's Motion for Summary Judgment [Doc. 55].[1] Based on the record before this court, Officer Owens's motion is granted in part and denied in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

On the evening of May 20, 2009, Officer James Owens ("Officer Owens"), a patrol officer employed by the Town of Jonesville Police Department, observed Plaintiff Britney Nicole Turner ("Plaintiff") driving her car, along with her passenger Frances Louise Zelarno ("Zelarno"), with one of its front headlights out and initiated a traffic stop.[2] [Doc. 48-2, at p. 19, ll. 14-16]; [Doc. 48-2, at p. 20, ll. 3-11]; [Doc. 48-3, at p. 8, ll. 1-12]. Plaintiff admitted that she had been stopped on four prior consecutive days for driving without a headlight. [Doc. 48-2, at

---

[1] Although this case's caption includes the "City of Jonesville" as a Defendant, in its Motion for Summary Judgment [Doc. 48] the Defendant refers to itself as the "Town of Jonesville."
[2] Frances Louise Zelarno has filed a companion case to the instant action. *See Frances Louise Zelarno v. Sheriff David Taylor, Union County, James Owens and the City of Jonesville*, C.A. No. 7:09-cv-02860-JMC.

1

p. 15, l. 15 – p. 17, l. 2]; [Doc. 48-4, at p. 20, l. 15 – p. 21, l. 2]; [Doc. 48-5, at p. 31, ll. 17-20]. However, Plaintiff did not fix her headlight, and it remained broken on May 20, 2009, when she and Zelarno left her home. [Doc. 48-3, at p. 7, l. 16 – p. 8, l. 12]. Plaintiff admitted that she knew it was against the law to drive without a headlight and that she had no problem being stopped yet again. [Doc. 48-3, at p. 8, ll. 13-18]; [Doc. 48-3, at p. 9, ll. 6-8]; [Doc. 48-3, at p. 49, ll. 18-22]. Just before pulling Plaintiff over, Officer Owens observed Zelarno throw a cigarette out of the car window. [Doc. 48-4, at p. 23, ll. 6-15].

Plaintiff and Zelarno admit that Officer Owens advised Plaintiff that he smelled alcohol coming from the car. [Doc. 48-2, at p. 24, ll. 18-21]; [Doc. 48-4, at p. 24, ll. 15-18]. Both Plaintiff and Zelarno admit that Plaintiff consented to a search of her vehicle upon request by Officer Owens. [Doc. 48-2, at p. 24, ll. 18-21]; [Doc. 48-4, at p. 24, ll. 15-18]. After consent, Officer Owens searched the vehicle and then used his police dog to sniff the vehicle for drugs. [Doc. 48-2, at p. 25, ll. 1-12]; [Doc. 48-3, at p. 18, ll. 2-24]; [Doc. 48-3, at p. 20, ll. 12-18]; [Doc. 48-4, at p. 26, ll. 1-24]; [Doc. 48-5, at p. 27, ll. 3-20]. Zelarno testified that Officer Owens showed Plaintiff some marijuana stems and seeds he found in the car. [Doc. 48-4, at p. 29, l. 21 – p. 30, l. 22]; [Doc. 48-5, at p. 25, l. 14 – p. 26, l. 3].[3]

When Officer Owens called for back-up, a deputy employed by the Union County Sheriff's Office responded. [Doc. 48-2, at p. 26, ll. 16-19]; [Doc. 48-3, at p. 23, ll. 10-14]; [Doc.

---

[3] Plaintiff admitted that she smoked marijuana once a month but was not smoking often at the time of this incident. [Doc. 48-3, at p. 4, ll. 19-23]; [Doc. 48-5, at p. 19, l. 24 – p. 20, l. 12]. Zelarno admitted being a "pothead" and smoking six "blunts" a day. [Doc. 48-5, at p. 19, ll. 2-6]. Zelarno also admitted selling marijuana. [Doc. 48-5, at p. 19, ll. 17-23]. Despite this, both denied smoking marijuana on May 20, 2009, before their evening excursion. [Doc. 48-2, at p. 21, ll. 4-7, ll. 18-25]; [Doc. 48-2, at p. 22, ll. 1-7, ll. 12-14]; [Doc. 48-4, at p. 21, ll. 19-21]; [Doc. 48-5, at p. 37, ll. 9-12].

48-4, at p. 28, ll. 16-23]. The officer assisted in a search of the vehicle. [Doc. 48-2, at p. 26, ll. 21-24]; [Doc. 48-4, at p. 28, ll. 20-23]. Officer Owens, apparently believing that Plaintiff or Zelarno may have hidden drugs on their bodies, requested that a female officer come to the scene to conduct a search of Plaintiff and Zelarno. [Doc. 48-2, at p. 26, l. 25 – p. 27, l. 4]; [Doc. 48-4, at p. 29, ll. 4-20].

A female detention officer employed by the Union County Sheriff's office responded. [Doc. 48-2, at p. 27, l. 25 – p. 28, l. 9]; [Doc. 48-4, at p. 29, ll. 4-20]. She took Plaintiff to the side of her patrol car away from the road and searched her in between the open passenger's side door and rear door. [Doc. 48-2, at p. 27, ll. 21-23]; [Doc. 48-2, at p. 29, ll. 9-23]; [Doc. 48-4, at p. 31, l. 2 – p. 32, l. 7]. She conducted searches of Plaintiff by asking her to hold out and shake her bra, unhook her bra, pull down her panties, cough, squat, and bounce. [Doc. 48-2, at p. 27, l. 25 – p. 28, l. 8]; [Doc. 48-2, at p. 29, ll. 9-23]; [Doc. 48-3, at p. 24, l. 24 – p. 25, l. 12]; [Doc. 48-4, at p. 31, ll. 13-24]; [Doc. 48-4, at p. 34, l. 16 – p. 35, l. 1]. The record does not reveal nor does Plaintiff point to evidence that the male officers or other individuals could observe this search conducted behind the patrol car. Zelarno was searched by the female officer in the same manner. [Doc. 48-2, at p. 36, ll. 17-22 – p. 37, ll. 18-24]; [Doc. 48-3, at p. 29, ll. 6-16]; [Doc. 48-4, at p. 37, l. 11 – p. 38, l. 15]. No drugs were found.

Officer Owens gave Plaintiff a warning for the headlight and gave Zelarno a ticket for throwing a cigarette out of Plaintiff's car. [Doc. 48-2, at p. 35, l. 22 – p. 36, l. 14]; [Doc. 48-4, at p. 41, ll. 14-18]. When Plaintiff's car would not start, Officer Owens assisted in jumpstarting her vehicle. Thereafter, Plaintiff and Zelarno left the scene. [Doc. 48-2, at p. 35, ll. 6-21]; [Doc. 48-4, at p. 41, l. 19 – p. 42, l. 12].

After the stop, Plaintiff and Zelarno went to a nearby convenience store. [Doc. 48-2, at p. 38, ll. 15-17]; [Doc. 48-2, at p. 40, ll. 1-18]; [Doc. 48-4, at p. 43, l. 12 – p. 44, l. 6]. Thereafter, Officer Owens came to the store and approached Plaintiff and Zelarno with a half of a marijuana cigarette indicating that he had found it under his car after they left. [Doc. 48-2, at p. 40, l. 20 – p. 41, l. 14]; [Doc. 48-4, at p. 44, l. 11 – p. 45, l. 6]. Plaintiff and Zelarno denied that the marijuana was theirs. [Doc. 48-2, at p. 41, ll. 18-23]; [Doc. 48-5, at p. 2, l. 6].

Plaintiff filed her Complaint [Doc. 1] on November 2, 2009. Officer Ownes filed his Answer [Doc. 7] on November 30, 2009, and the instant Motion for Summary Judgment [Doc. 55] on September 29, 2010.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist

4

which give rise to a genuine issue. *See id* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## DISCUSSION

### I.     42 U.S.C. § 1983

Plaintiff's case primarily rests on her claims under 42 U.S.C. § 1983, the federal provision permitting a civil action for the deprivation of federally guaranteed rights. Section 1983 allows a citizen, or other person within the jurisdiction of the United States, to bring suit against any person acting under the color of law, whether state or federal, for depriving her of rights secured by the United States Constitution. *See* 42 U.S.C. § 1983. This includes police officers employed by municipalities. *See Monell v. Dept. of Soc. Serv. Of City of N.Y.*, 436 U.S. 658 (1978). To state a claim under section 1983, a plaintiff must allege 1) that a right secured by the constitution or laws of the United States has been violated, and 2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.     Constitutional Allegations

Plaintiff asserts Officer Owens caused her to be illegally strip searched in violation of her Fourth, Fifth, Sixth, Seventh, Eighth, Fourteenth, and Twenty-fourth Amendment rights of the

United States Constitution. Given Plaintiff's focus on the strip searches, the right at issue here is that protected by the Fourth Amendment - the right to protection against unreasonable search and seizures. *See* U.S. Const. amend IV. The other Amendments (Fifth, Sixth, Seventh, Eighth, and Twenty-fourth) are irrelevant, inapplicable to the facts alleged, and should be disregarded; the court's analysis is directed to the Fourth Amendment.[4]

The Fourth Amendment prevents unreasonable searches of "persons, houses, papers, and effects." U.S. Const. amend. IV. "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." *Schmerber v. State of California*, 384 U.S. 757, 767 (1966). The Fourteenth Amendment essentially extends the federal right of due process to state and local levels of government, and it is the vehicle through which the procedural and substantive requirements of due process are applied to state and local governments. *See* U.S. Const. Amend. XIV, § 2; *see also Hallinger v. Davis*, 146 U.S. 314, 320 (1893).

Under the Fourth Amendment, a law enforcement officer is generally required to have probable cause for conducting a search under the Fourth Amendment right of individuals to be secure against unreasonable searches and seizures. *See Safford Unified School District #1 v. Redding*, 129 S. Ct. 2633, 2639 (2009). "[P]robable cause exists where the facts and circumstances are sufficient to warrant a person of reasonable caution to believe that a crime has been committed and that seizable property can be found at the place to be searched." *United*

---

[4] The Fifth Amendment protects persons against prosecution of particular crimes without indictment, double-jeopardy, self-incrimination, and the deprivation of life, liberty or property without due process. *See* U.S. Const. amend. V. The Sixth Amendment speaks to the right to a speedy trial, trial by jury, being advised of charges, confrontation of witnesses, and assistance of counsel. *See* U.S. Const. amend. VI. The Seventh Amendment further protects the right to a trial by jury in certain instances. *See* U.S. Const. amend. VII. The Eighth Amendment prevents cruel and unusual punishment. *See* U.S. Const. amend. VIII. The Twenty-fourth Amendment speaks to poll taxes and the right to vote. *See* U.S. Const. amend. XXIV.

*States v. Dorlouis*, 107 F.3d 248, 255 (4th Cir. 1997). Generally speaking, the required knowledge component of probable cause for an officer's search is that it raises a "fair probability" or a "substantial chance" of discovering criminal activity. *Safford*, at 2639 (citing *Illinois v. Gates*, 462 U.S. 213, 238, 244 n. 13). The probable cause determination is made through consideration of "the totality of the circumstances." *Id*. Probable cause naturally deals with probabilities, and due weight must be given to an officer's specific reasonable inferences that he draws from facts in light of his experience. However, mere suspicions of an officer do not support a finding of probable cause. *See Terry v, Ohio*, 392 U.S. 1, 27 (1968), and *Henry v. United States*, 361 U.S. 98 (1959).  In sum, "to be constitutional, a search must not be unreasonable." *Amaechi v. West*, 237 F.3d 356, 360 (4th Cir. 2001) (citing *Veronia Sch. Dist. v. Acton*, 515 U.S. 646, 653).

**1.     The Automobile Search**

Initially, the court reads Plaintiff's Complaint to allege that her constitutional rights were violated because Officer Owens's "conduct of performing a stop and investigation pursuant to that stop" was unconstitutional.  [Doc. 34, at p. 3-4, ¶ B].  As Plaintiff admits, Officer Owens stopped her because one of her headlights was out, and she admitted that she knew it was against the law to drive without properly operating headlights.  *See* [Doc. 48-3, at pp. 8-9, and 47].  In addition, Zelarno, Plaintiff's passenger, admitted that Officer Owens told Zelarno that he saw her throw a cigarette out of the car window before pulling Plaintiff over.  [Doc. 48-4, at p. 23]. Officer Owens ultimately gave Zelarno a ticket for the cigarette.  [Doc. 48-4, at p. 41].

Plaintiff and Zelarno testified that Officer Owens told Plaintiff that he smelled alcohol. [Doc. 48-2, at p. 23].  In his affidavit, Officer Owens states that he smelled marijuana emanating from the car.  [Doc. 55-2, at p. 1, ¶ 6].  However, viewing the testimony in a light most favorable

to Plaintiff, the court accepts as true that Officer Owens smelled alcohol.  In any event, Plaintiff consented to a search of her vehicle.  [Doc. 48-2, at p. 24]; [Doc. 48-4, at p. 24].  The search of the vehicle was proper because "[v]alid consent is a well-recognized exception to the Fourth Amendment prohibition against warrantless searches."  *United States v. Nealy*, 564 F.3d 346, 349-50 (4th Cir. 2009) (quoting *Trulock v. Freeh*, 275 F.3d 391, 401 (4th Cir. 2001)).

**2.     The Strip Search**

The court also interprets Plaintiff's complaint as alleging a violation of her constitutional rights because of an allegedly unconstitutional strip search.  As Plaintiff highlights with citation to a number of cases, strip searches are highly intrusive and can be a "thoroughly degrading and frightening" experience.  *Chapman v. Nichols*, 989 F.2d 393, 396 (10th Cir. 1993). The United States Court of Appeals for the Fourth Circuit has held that "[a] strip search includes the exposure of a person's naked body for purposes of a visual or physical examination." *Amaechi*, 237 F.3d at 363 (citing *United States v. Dorlouis*, 107 F.3d 348, 256 (4th Cir. 1997)).  Searches of a person are generally not permitted absent a search warrant, which may only issue upon probable cause. *See New York v. Belton*, 453 U.S. 454, 457 (1981).  In this case, Officer Owens did not have a warrant to search Plaintiff and Zelarno, and at the time of their search, Plaintiff and Zelarno were not under arrest, they were merely detained.

The circumstances in which warrantless strip searches may be permissible are narrow, and they include strip searches "incident to an arrest, at an international border, or at a school." *Lessley v. The City of Madison*, 654 F. Supp. 2d 877, 902 (S.D. Ind. 2009); *see, e.g., United States v. Montoya de Hernandez,* 473 U.S. 531, 537-39 (1985) (finding constitutional a warrantless search at the international border because the search was supported by reasonable suspicion); *Campbell v. Miller*, 499 F.3d 711, 718 (7th Cir. 2007) (finding that the search of the

arrestee, "involving . . . public nudity and exposure of intimate body parts" was unconstitutional because it was unreasonable); *Doe v. Renfrow*, 631 F.2d 91, 92 (7th Cir. 1980) (reversing trial court's grant of qualified immunity because school officials' nude search of thirteen year old student clearly violated Fourth Amendment).

Additionally, "Courts across the country are uniform in their condemnation of intrusive searches performed in public." *Campbell*, 499 F.3d at 719. In this same vein, the Fourth Circuit has held that "as a matter of law, no police officer in this day and time could reasonably believe that conducting a strip search in an area exposed to the general view of persons known to be in the vicinity whether or not any actually viewed the search is a constitutionally valid governmental invasion of [the] personal rights that [such a] search entails." *Logan v. Shealy*, 660 F.2d 1007, 1014 (4th Cir. 1981). The Fourth Circuit has also stated that "we have repeatedly emphasized the necessity of conducting a strip search in private" and that "absent clear justification or exigent circumstances, an officer is not allowed to strip an arrestee on a public street pursuant to a search incident to an arrest . . . ." *Amaechi*, 237 F.3d at 364. Thus, in applying *Amaechi*, a search of one not under arrest on a public street, absent exigent circumstances, would also be unconstitutional.

During the strip search, which according to Plaintiff lasted "about five minutes," the record indicates that Plaintiff was made to "undo [her] bra and pull [her] shirt around [her] neck." [Doc. 55-3, at p. 19, ll. 2-3]. The female officer then patted her down and then refastened her bra. [Doc. 55-3, at p. 19, ll. 5-6]. The female officer then "made [Plaintiff] pull [her] pants and her panties down and squat and cough and bounce." [Doc. 55-3, at p. 19, ll. 7-8]. Here, the record indicates that the strip search of Plaintiff occurred on a public road adjacent to a restaurant and beside the open passenger door of the female officer's car. [Doc. 55-3, at p.

9

20, ll. 9-23]. While the purpose of opening the door was apparently to afford Plaintiff some measure of privacy, the search was, nevertheless, conducted in public, and Plaintiff was standing on the side of the road next to the officer's car. [Doc. 55-3, at p. 23].

Officer Owens argues that his actions were performed in good faith and thus were a legal justification for the manner in which the strip search was conducted. Generally, the good faith exception applies to searches "conducted pursuant to warrants" ultimately determined to be defective because it was issued without probable cause. *United States v. Leon*, 468 U.S. 897, 924 (1984). Although there are some circumstances in which courts have applied the good faith exception to warrantless searches, *see Illinois v. Krull*, 480 U.S. 340 (1987) (upholding a warrantless search conducted pursuant to a statute later declared unconstitutional), a number of circuit courts have declined to apply the good faith exception to warrantless searches. *See United States v. Scales*, 903 F.2d 765 (10th Cir. 1990) (holding that "the seizure of Plaintiff's suitcase without a warrant or without probable cause and exigent circumstances" violates the Fourth Amendment); *United States v. Curzi*, 867 F.2d 36 (1st Cir. 1989) (holding that the good faith exception does not apply to a warrantless search of a home despite the fact that the police had an arrest warrant for a person associated with the home but not its owner); *United States v. Winsor*, 846 F.2d 1569 (9th Cir. 1988) (holding that despite the police officers' claim that the search was conducted in good faith, a search of Plaintiff's hotel room without probable cause violated the Fourth Amendment). While Officer Owens has pointed to no Fourth Circuit cases addressing the precise issue presented in this case, one court has held that "in the absence of an arrest, a warrantless strip search, let alone an even more intrusive body cavity search, violates the Fourth Amendment even when there may be some basis to suspect contraband." *Gray v. City of Columbus*, Cause No. IP 98-1395-C H/G, 2000 U.S. Dist. LEXIS 7207, at *24 (S.D. Ind. January

31, 2000) (citing *Doe v. Renfrow*, 631 F.2d 91 (7th Cir. 1980)).  The *Gray* court continued: "the starting point for analysis of Plaintiff's claims here is that a warrantless search of a person requires legal justification."  *Id.*  Based on the authority outlined herein, the court finds that Defendants are not entitled to summary judgment as a matter of law based on the good faith exception to the warrant requirement.

Officer Owens also argues that exigent circumstances existed in this case.  Exigent circumstances are among the exceptions that may provide a justification for a warrantless strip search.  *See United States v. Smith*, 797 F.2d 836, 840 (10th Cir. 1986).  According to the court in *Smith*, "[t]he basic aspects of the exigent circumstances exception are that: 1) the law enforcement officers must have reasonable grounds to believe that there is immediate need to protect their lives or others or the property of others, 2) the search must not be motivated by an intent to arrest and seize evidence, and 3) there must be some reasonable basis, approaching probable cause to associate an emergency with the area or place to be searched."  *Id.*  Similarly, the court in *Moss* held that, within the context of a premises search, the exigent circumstances that might support the good faith exception include a search or seizure "to prevent imminent removal or destruction of evidence, to arrest fleeing suspects, or to avoid imminent threats of death or bodily harm."  *United States v. Moss*, 963 F.2d 673, 677-78 (4th Cir.1992)(citing W.L. LaFave, 2 *Search and Seizure* §§ 6.1(f), 6.5(b), 6.5(d) (Second ed. 1987)).

Again, Plaintiff and Zelarno were not under arrest at the time of the warrantless strip search.  To succeed on his motion for summary judgment, Officer Owens would have to establish that the facts were such that exigent circumstances and probable cause existed in this case.  After Officer Owens initially conducted a search of Plaintiff's car, he did not find anything.  [Doc. 55-3, at p. 16].  He then used a K-9 to assist in the search.  However, Plaintiff

11

argues in her brief that the K-9 "never hit on Plaintiff or Ms. Turner." [Doc. 69, at p. 4]. In his affidavit, Officer Owens asserts that the K-9 alerted "by changing his posture then by sitting." [Doc. 55-2, at p. 2, ¶ 10]. But Plaintiff testified in her deposition that the dog "did not do nothing." [Doc. 55-3, at p. 15]. Furthermore, Plaintiff testified in her deposition that "after [the dog] was done searching my car, he went back to the passenger beside my car, not in the car, and sat down while the – [Officer Owens] said, 'Sit' . . . ." The discrepancy between Officer Owens's statement in his affidavit that the K-9 in question alerts by sitting and Plaintiff's deposition testimony which gives rise to a reasonable inference that the dog sat in response to Officer Owens's statements indicates a genuine dispute and an ambiguity over the question of whether the K-9 alerted and what an alert means for this dog. Consequently, this ambiguity should be resolved in Plaintiff's favor for purposes of this motion.

After Officer Owens used the K-9 to assist in the search, he called for backup, and another Union County Deputy assisted in the search. Although the record is unclear as to exactly when, at some point during the search of Plaintiff's car, marijuana stems and seeds were found. Despite this discovery, Officer Owens did not explicitly place Plaintiff or Zelarno under arrest but instead proceeded to have them strip searched. Here, the facts do not indicate that lives or property were in immediate danger, nor do the facts indicate that an emergency could be associated with the place to be searched. Furthermore, the facts do not indicate that the destruction of evidence was imminent. Instead, when viewed in a light most favorable to Plaintiff, the facts indicate that the strip search seemed to be motivated by an intent to discover and "seize evidence." . *Smith,* 797 F. 2d at 840. In sum, Officer Owens has not provided a clear legal justification for the warrantless strip search conducted of Plaintiff who, at the time, was not

under arrest. Accordingly, Officer Owens's Motion for Summary Judgment on Plaintiff's Fourth Amendment claim is denied.

**B.      Qualified Immunity**

"To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct." *VanDerHorst v. Hoffer*, C/A No. 0:09-cv-0706-SB-PJG, 2010 WL 1009997, at *2 (D.S.C. February 16, 2010) (citing *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009)).

Under the qualified immunity defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Cone v. Nettles*, 308 S.C. 109, 417 S.E.2d 523 (1992). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id*. "Qualified immunity ensures that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'" *Swagler v. Sheridan*, No.: RDB-08-2289, 2011 U.S. Dist. LEXIS 74840 (D. Md. July 12, 2011) (citing *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008)).

"Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand." *Id*. In its analysis above, *supra* I.A.2, the court has determined that summary judgment is not appropriate

because, the facts as interpreted in the light most favorable to Plaintiff, indicate that Defendant Officer Owens violated Plaintiff's constitutional rights. Therefore, the court will turn to the question of whether those rights were clearly established at the time of the violation. To be clearly established,

> "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has been previously held unlawful; but it is to say that in light of pre-existing law the unlawfulness must be apparent."

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The court concludes that Plaintiff's rights were clearly established at the time of the strip search. In support of this conclusion the court reiterates the law discussed above, *see supra* I.A.2: namely that warrantless strip searches, especially of those not under arrest, should not be conducted in public. *Amaechi*, 237 F.3d at, 364 ("we have repeatedly emphasized the necessity of conducting a strip search in private" and that "absent clear justification or exigent circumstances, an officer is not allowed to strip an arrestee on a public street pursuant to a search incident to an arrest . . . ."). Accordingly, Plaintiff has presented sufficient evidence that she was strip searched in public, and the law, as it relates to strip searches of this kind, was clearly established at the time; therefore, Officer Owens is not entitled to a defense of qualified immunity as matter of law.

### C.    § 1983 Pattern and Practice Claim

Plaintiff alleges that Officer Owens participated in a pattern or practice of engaging in the strip search without probable cause. In Plaintiff's view, Officer Owens consequently violated Plaintiff's constitutional rights because "[t]here is not one piece of evidence presented by this Defendant or the Town of Jonesville to show that this Defendant was reprimanded for his conduct on the date at issue." [Doc. 69, at p. 4].

Here, the court reads Plaintiff's argument concerning the absence of a reprimand to be a claim that this fact is affirmative evidence that Officer Owens violated a policy or custom or that he was involved in a pattern of unconstitutional behavior. But to survive summary judgment, Plaintiff must present more than the mere absence of evidence of a reprimand in support of her claims. Instead, Plaintiff has identified no evidence that Officer Owens violated any constitutional right of Plaintiff pursuant to any express policy, custom or practice of the Town of Jonesville relating to physical searches incident to a traffic stop.

Furthermore, the record is devoid of evidence that Officer Owens was not properly trained regarding searches incident to traffic stops. The record is also devoid of evidence that Officer Owens asked Plaintiff to be searched because he was not properly supervised or because he was involved in a pattern of unconstitutional practices. In sum, there is no evidence that any constitutional right of Plaintiff was violated because of Officer Owens's involvement in the establishment, promulgation or enforcement of such patterns and practices. Accordingly, Officer Owens is entitled to summary judgment with respect to Plaintiff's Fourteenth Amendment pattern and practice claim.

### III.    Negligence

Plaintiff argues that Officer Owens was negligent in causing her strip search. To establish liability in a negligence action, the claimant must show: (1) a duty of care owed by the defendant to the plaintiff; (2) breach of that duty; and (3) damages proximately resulting from the breach. *See Bishop v. South Carolina Dep't of Mental Health,* 331 S.C. 79, 88, 502 S.E.2d 78, 82 (1998). Statutes, contractual relationships, property interests, and other special circumstances may give rise to an affirmative legal duty to act. *See Madison ex rel. Bryant v. Babcock Ctr., Inc.,* 371 S.C. 123, 136, 638 S.E.2d 650, 656-57 (2006). The South Carolina Tort Claims Act ("the Tort

Claims Act" or "the Act") constitutes the exclusive civil remedy for any tort committed by a governmental employee while acting within the scope of the employee's official duties. *See* S.C. Code Ann. § 15-78-200 (2005). The Tort Claims Act does not create causes of action, but removes the common law bar of governmental immunity. *See Arthurs ex rel. Estate of Munn v. Aiken Cty.,* 346 S.C. 97, 105, 551 S.E.2d 579, 583 (2001). The Act is a "limited waiver of governmental immunity." *Steinke v. South Carolina Dep't of Labor, Licensing, and Regulation,* 336 S.C. 373, 393, 520 S.E.2d 142, 152 (1999) (citing *Moore v. Florence School Dist. No. 1*, 314 S.C. 335, 444 S.E.2d 498 (1994)).

However, under South Carolina law, "[w]hen, and only when, the plaintiff relies upon a statute as creating the duty does a doctrine known as the 'public duty rule' come into play." *Arthurs ex rel. Estate of Munn,* 346 S.C. at 103, 551 S.E.2d at 582. Thus, in South Carolina, there is no duty owed by the police to individuals; rather, the police owe duties to the public at large. *See Wyatt v. Fowler*, 326 S.C. 97, 101, 484 S.E.2d 590, 592 (1997). In *Wyatt*, the Supreme Court of South Carolina considered a negligence claim asserted against the Sheriff. *See id.* There, two sheriff's deputies entered Wyatt's residence at 5:30 pm while he was asleep looking for Allen Parrish for whom they had an arrest warrant. *See id.* at 99, 484 S.E.2d at 592. Wyatt awoke thinking that there was a burglary taking place, armed himself, and went to investigate. *See id.* The police drew weapons from their holsters. *See id.* When Wyatt approached the deputies, they identified themselves, and he provided proof he was not Parrish. *See id.* The deputies then left without further incident. *See id.* at 100, 484 S.E.2d at 592. Wyatt sued alleging negligence against the deputies and the Sheriff. *See id.*

The Supreme Court of South Carolina found that the trial court erred in failing to grant a directed verdict in favor of the Sheriff on the negligence claim. *Id.* at 100-101, 484 S.E.2d at

592. It adopted the view of other jurisdictions that police owe their duties to the public at large and not to individuals. *Id.* For example, the Court relied on *Flones v. Dalman*, 199 Mich. App. 396, 403, 502 N.W.2d 725, 729 (Mich. App. 1993) in reaching its conclusion. *See Wyatt*, 326 S.C. at 101, 484 S.E.2d at 592. In *Flones*, state troopers were investigating homosexual activity in highway restrooms and mistakenly identified and arrested Flones as a suspect. *See Flones,* 199 Mich. App. at 399, 502 N.W.2d 727. The court rejected Flones' claim for negligence, finding that there was no legal duty as a matter of law. *Id.* at 403, 502 N.W. 2d at 729. The court held that "[a] police officer's duty to preserve the peace is owed to the public at large, not to any one individual . . . . Here, the defendant's duty to the public is to detect and investigate crime; no duty is owed to the plaintiffs as individuals." *Id.*; *see also Wimer v. Idaho*, 122 Idaho 923, 925, 841 P.2d 453, 455 (Idaho Ct. App. 1992) (finding that there is no cause of action against officers for negligent investigation). In *Washington v. Lexington County Jail*, 337 S.C. 400, 406, 523 S.E.2d 204, 207 (Ct. App. 1999), the South Carolina Court of Appeals reiterated the South Carolina Supreme Court's holding in *Wyatt*. In *Washington,* the Court of Appeals found that police officers owe duties to the public at large and not to individuals. *Id.* ("We find the situation of guards who maintain custody of inmates analogous to that of police officers who owe a duty generally to society rather than to any one individual. Accordingly, we hold that those who maintain custody of prisoners or inmates do so for the protection of the public and are, therefore, not liable to individuals for damages caused by an escaped inmate under the public duty rule"). For the foregoing reasons, the court finds that Officer Owens owed no duty to Plaintiff. Accordingly, Officer Owens is entitled to summary judgment with respect to Plaintiff's negligence claim.

**IV. Civil Conspiracy**

Plaintiff argues that there were actions on the part of Officer Owens, the county detention officer and the officer with the Union County Sheriff's Department that constitute civil conspiracy and deprived Plaintiff of her constitutional rights. To establish her claim for civil conspiracy, Plaintiff must allege and prove: (1) [a] combination of two or more persons; (2) for the purpose of injuring her; and (3) which caused special damages. *See LaMotte v. Punchline of Columbia, Inc.*, 296 S.C. 66, 69, 370 S.E.2d 711, 712 (1988). There is no evidence to support Plaintiff's civil conspiracy claim against Officer Owens. Contrary to Plaintiff's allegations, the evidence establishes that Officer Owens initiated the traffic stop of Plaintiff because she had a broken headlight and that he conducted a search of her vehicle with her consent. [Doc. 48-2, at p. 19, ll. 14-16]; [Doc. 48-2, at p. 20, ll. 3-11];[Doc. 48-2, at p. 24, ll. 18-21]; [Doc. 48-3, at p. 8, ll. 1-12]; [Doc. 48-3, at p. 17, ll. 10-13]; [Doc. 48-3, at p. 18, ll. 2-4]. The evidence further establishes that he called for backup and a Union County Sheriff's Deputy responded. He subsequently requested a female officer to search Plaintiff. [Doc. 48-2, at p. 26, l. 16- p. 25 – 27, l. 4]; [Doc. 48-3, at p. 22, ll. 10-14]; [Doc. 48-4, at p. 28, ll. 1-6; p. 29, ll. 4-20]. There is no evidence that these events unfolded in a preplanned manner or that these officers conspired with one another to injure Plaintiff. In addition, there are no special damages claimed by Plaintiff. Special damages are damages that are claimed in addition to damages sought under other causes of action. *See Robinson v. Metts*, 86 F. Supp. 2d 557, 563 (D.S.C. 1997). The damages Plaintiff seeks for conspiracy are the same as those sought under her other causes of action. Accordingly, Officer Owens's Motion for Summary Judgment with respect to Plaintiff's Civil Conspiracy claim is granted.

## CONCLUSION

For the foregoing reasons, Defendant James Owens's Motion for Summary Judgment [Doc. 55] is **DENIED in part** and **GRANTED in part**. It is denied with respect to Plaintiff's claim for violation of the Fourth Amendment and Officer Owens's defense of qualified immunity. Officer Owens's motion is granted with respect to Plaintiff's pattern and practice, negligence and civil conspiracy claims.

**IT IS SO ORDERED**

s/J. Michelle Childs
United States District Judge

August 24, 2011
Greenville, South Carolina