# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# SPARTANBURG DIVISION

| | |
|---|---|
| Britney Nicole Turner, | ) |
| Plaintiff, | ) |
| | ) C.A. No. 7:09-cv-02858-JMC |
| v. | ) |
| | ) **ORDER AND OPINION** |
| Sheriff David Taylor, Union County, James Owens and the City of Jonesville, | ) |
| Defendants. | ) |

This matter is before the court on Defendants Union County ("Union County") and Union County Sheriff David Taylor's ("Taylor") (collectively "Defendants") Motion for Summary Judgment [Doc. 52].[1] Based on the record before this court, Defendants' motion is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

On the evening of May 20, 2009, Officer James Owens ("Owens"), a patrol officer employed by the Town of Jonesville Police Department, observed Plaintiff Britney Nicole Turner ("Plaintiff") driving her car, along with her passenger Frances Louise Zelarno ("Zelarno"), with one of its front headlights out and initiated a traffic stop.[2] [Doc. 48-2, at p. 19, ll. 14-16]; [Doc. 48-2, at p. 20, ll. 3-11]; [Doc. 48-3, at p. 8, ll. 1-12]. Plaintiff admitted that she had been stopped on four prior consecutive days for driving without a headlight. [Doc. 48-2, at

---

[1] Although this case's caption includes the "City of Jonesville" as a Defendant, in its Motion for Summary Judgment [Doc. 48] the Defendant refers to itself as the "Town of Jonesville."

[2] Frances Louise Zelarno has filed a companion case to the instant action. *See Frances Louise Zelarno v. Sheriff David Taylor, Union County, James Owens and the City of Jonesville*, C.A. No. 7:09-cv-02860-JMC.

p. 15, l. 15 – p. 17, l. 2]; [Doc. 48-4, at p. 20, l. 15 – p. 21, l. 2]; [Doc. 48-5, at p. 31, ll. 17-20]. However, Plaintiff did not fix her headlight, and it remained broken on May 20, 2009, when she and Zelarno left Plaintiff's home. [Doc. 48-3, at p. 7, l. 16 – p. 8, l. 12]. Plaintiff admitted that she knew it was against the law to drive without a headlight and that she had no problem being stopped yet again. [Doc. 48-3, at p. 8, ll. 13-18]; [Doc. 48-3, at p. 9, ll. 6-8]; [Doc. 48-3, at p. 49, ll. 18-22]. Just before pulling Plaintiff over, Owens saw Zelarno throw a cigarette out of the car window. [Doc. 48-4, at p. 23, ll. 6-15].

Plaintiff and Zelarno admit that Owens advised Plaintiff that he smelled alcohol coming from the car. [Doc. 48-2, at p. 24, ll. 18-21]; [Doc. 48-4, at p. 24, ll. 15-18]. Both Plaintiff and Zelarno admit that Plaintiff consented to a search of her vehicle upon request by Owens. [Doc. 48-2, at p. 24, ll. 18-21]; [Doc. 48-4, at p. 24, ll. 15-18]. After consent, Owens searched the vehicle and then used his police dog to sniff the vehicle for drugs. [Doc. 48-2, at p. 25, ll. 1-12]; [Doc. 48-3, at p. 18, ll. 2-24]; [Doc. 48-3, at p. 20, ll. 12-18]; [Doc. 48-4, at p. 26, ll. 1-24]; [Doc. 48-5, at p. 27, ll. 3-20]. Zelarno testified that Owens showed Plaintiff some marijuana stems and seeds he found in the car. [Doc. 48-4, at p. 29, l. 21 – p. 30, l. 22]; [Doc. 48-5, at p. 25, l. 14 – p. 26, l. 3].[3]

When Owens called for back-up, a deputy employed by the Union County Sheriff's Office responded. [Doc. 48-2, at p. 26, ll. 16-19]; [Doc. 48-3, at p. 23, ll. 10-14]; [Doc. 48-4, at

---

[3] Plaintiff admitted that she smoked marijuana once a month but was not smoking often at the time of this incident. [Doc. 48-3, at p. 4, ll. 19-23]; [Doc. 48-5, at p. 19, l. 24 – p. 20, l. 12]. Zelarno admitted being a "pothead" and smoking six "blunts" a day. [Doc. 48-5, at p. 19, ll. 2-6]. Zelarno also admitted selling marijuana. [Doc. 48-5, at p. 19, ll. 17-23]. Despite this, both denied smoking marijuana on May 20, 2009, before their evening excursion. [Doc. 48-2, at p. 21, ll. 4-7, ll. 18-25]; [Doc. 48-2, at p. 22, ll. 1-7, ll. 12-14]; [Doc. 48-4, at p. 21, ll. 19-21]; [Doc. 48-5, at p. 37, ll. 9-12].

p. 28, ll. 16-23]. The officer assisted in a search of the vehicle. [Doc. 48-2, at p. 26, ll. 21-24]; [Doc. 48-4, at p. 28, ll. 20-23]. Owens, apparently believing that Plaintiff or Zelarno may have hidden drugs on their bodies, requested that a female officer come to the scene to conduct a search of Plaintiff and Zelarno. [Doc. 48-2, at p. 26, l. 25 – p. 27, l. 4]; [Doc. 48-4, at p. 29, ll. 4-20].

A female detention officer employed by the Union County Sheriff's office responded. [Doc. 48-2, at p. 27, l. 25 – p. 28, l. 9]; [Doc. 48-4, at p. 29, ll. 4-20]. She took Plaintiff to the side of her patrol car away from the road and searched her in between the open passenger's side door and rear door. [Doc. 48-2, at p. 27, ll. 21-23]; [Doc. 48-2, at p. 29, ll. 9-23]; [Doc. 48-4, at p. 31, l. 2 – p. 32, l. 7]. She conducted searches of Plaintiff by asking her to hold out and shake her bra, unhook her bra, pull down her panties, cough, squat, and bounce. [Doc. 48-2, at p. 27, l. 25 – p. 28, l. 8]; [Doc. 48-2, at p. 29, ll. 9-23]; [Doc. 48-3, at p. 24, l. 24 – p. 25, l. 12]; [Doc. 48-4, at p. 31, ll. 13-24]; [Doc. 48-4, at p. 34, l. 16 – p. 35, l. 1]. The record neither reveals nor does Plaintiff point to evidence that the male officers or other individuals could observe this search conducted behind the patrol car. Zelarno was searched by the female officer in the same manner. [Doc. 48-2, at p. 36, ll. 17-22 – p. 37, ll. 18-24]; [Doc. 48-3, at p. 29, ll. 6-16]; [Doc. 48-4, at p. 37, l. 11 – p. 38, l. 15]. The officers found no drugs.

Owens gave Plaintiff a warning for the headlight and gave Zelarno a ticket for throwing a cigarette out of Plaintiff's car. [Doc. 48-2, at p. 35, l. 22 – p. 36, l. 14]; [Doc. 48-4, at p. 41, ll. 14-18]. When Plaintiff's car would not start, Owens assisted in jumpstarting her vehicle. Thereafter, Plaintiff and Zelarno left the scene. [Doc. 48-2, at p. 35, ll. 6-21]; [Doc. 48-4, at p. 41, l. 19 – p. 42, l. 12].

After the stop, Plaintiff and Zelarno went to a nearby convenience store. [Doc. 48-2, at p. 38, ll. 15-17]; [Doc. 48-2, at p. 40, ll. 1-18]; [Doc. 48-4, at p. 43, l. 12 – p. 44, l. 6]. Owens came to the store and approached Plaintiff and Zelarno with a half of a marijuana cigarette indicating that he had found it under his car after they left. [Doc. 48-2, at p. 40, l. 20 – p. 41, l. 14]; [Doc. 48-4, at p. 44, l. 11 – p. 45, l. 6]. Plaintiff and Zelarno denied that the marijuana was theirs. [Doc. 48-2, at p. 41, ll. 18-23]; [Doc. 48-5, at p. 2, l. 6].

Plaintiff filed her Complaint on November 2, 2009, naming Union County and Taylor as Defendants. [Doc. 1]. Defendants filed their Answer [Doc. 34] on February 18, 2010, and the instant Motion for Summary Judgment [Doc. 52] on September 8, 2010.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist

4

which give rise to a genuine issue. *See id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

**I.     Union County's Liability**

Union County asserts that summary judgment is appropriate because Plaintiff's allegations against it assume an employer/employee relationship.  According to Union County, no such relationship exists between Union County and its sheriff and deputy sheriffs.  Plaintiff argues that Union County is a proper defendant because Union County employs Taylor and his deputies.  Plaintiff also argues that Union County is a proper defendant because Taylor exercised administrative control over the Union County Detention Center and as such steps out of his role as sheriff and instead becomes a warden, which according to Plaintiff is an unelected position that gives rise to Union County's liability.  The essence of Plaintiff's argument is that Union County is liable because of the alleged master/servant relationship that exists between it and Taylor.

In South Carolina, "[t]he decisive test in determining whether the relationship of master and servant exists is whether the purported master has the right or power to direct and control the servant in the performance of his work and the manner in which the work is done." *Jamison v.*

*Morris*, 385 S.C. 215, 221, 684 S.E.2d 168, 171 (2009); *see also McConnell v. Adams*, 829 F.2d 1319, 1328 (4th Cir. 1987).  Furthermore, according to the South Carolina Supreme Court,

> (1) [T]he South Carolina constitution establishes the office of the sheriff and the term of office.  *S.C. Const. art. V, § 24*; (2) the duties and compensation of sheriffs and deputies are set forth by the General Assembly; (3) their arrest powers are related to state offenses; and (4) the Governor of South Carolina has the authority to remove a sheriff for misconduct and fill the vacancy.  Based upon these factors, the court [in *Gulledge*] found that the State has the 'potential power of control' over the office of sheriff, qualifying the sheriff as a state official.  Moreover, a deputy, as an agent of the sheriff, is also 'more closely connected to the state than to the county,' hence a state official.

*Cone v. Nettles*, 308 S.C. 109, 112, 417 S.E.2d 523, 525 (1992) (quoting *Gulledge v. Smart*, 691 F. Supp. 947 (D.S.C. 1998)), *aff'd*, 878 F.2d 379 (4th Cir. 1989). Because sheriffs and deputy sheriffs are state – not county – officials, Union County cannot be liable for Taylor's alleged harms to Plaintiff because it lacks the control over Taylor and his deputies necessary to establish an employee/employer relationship.  Furthermore, the United States Supreme Court has clearly held that a governmental entity may not be held liable for the acts of its employees under a respondeat superior theory because of the employment relationship. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978).  Accordingly, Defendants' Motion for Summary Judgment is granted with respect to all of Plaintiff's claims against Union County.

## II.    Sheriff Taylor's Eleventh Amendment Immunity

Taylor contends that summary judgment is appropriate because as a state official he is entitled to Eleventh Amendment immunity.  Plaintiff has sued Taylor in his official capacity, and her Amended Complaint alleges that Taylor "control[led] certain deputies under his supervision . . . ."  [Doc. 34, at 1, ¶¶ 3].  Plaintiff has not alleged that Taylor was personally involved in the instant facts, and Taylor himself states in his Affidavit that "[he] was not personally involved

with the stop or search of [Plaintiff] or Frances Zelarno" and that "[he] was not aware of this incident until some time after it was over." [Doc. 52-2, at 2, ¶ 3].

Under the Eleventh Amendment, states are immune from suit in federal court unless they have, "by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction[,]" waived its sovereign immunity. *Edelman v. Jordan*, 415 U.S. 651, 662-63, 673 (1999); *see also Gulledge v. Smart*, 691 F. Supp. 947, 954 (D.S.C. 1988). "In addition, an action against a public official in his official capacity is beyond the jurisdiction of a federal court if that official is deemed to be an agent of the state." *Gulledge*, 691 F. Supp. at 954 (citing *McConnell v. Adams*, 829 F.2d 1319 (4th Cir. 1987)). This court has held that under South Carolina law sheriffs and deputy sheriffs are agents of the state and not of the counties: "[i]t is well-established in this state that a sheriff's office is an agency of, and a sheriff 'dominated by,' the state, such that a suit against the sheriff in his official capacity is a suit against the State." *Carroll v. Greenville Cty. Sheriff's Dept.*, 871 F. Supp. 844, 846 (D.S.C. 1994) (quoting *Gulledge*, 691 F. Supp. at 955). Similarly, "South Carolina's county governing bodies 'have no measurable control over the appointment, discharge, . . ., duties, or policies of the [sheriff and his deputies]." *Id.* at 955 (quoting *McConnell*, 829 F.2d at 1327); *see also McCall v. Williams*, 52 F. Supp. 2d 611, 615 (D.S.C. May 19, 1999) ("As an arm of the State, a deputy sheriff is entitled to Eleventh Amendment immunity from civil damages suits in federal court, unless the state expressly waived this immunity.") South Carolina has not expressly waived immunity nor has it consented to suit in federal court. Instead, South Carolina has expressly preserved Eleventh Amendment immunity in the South Carolina Tort Claims Act. *See* S.C. Code Ann. § 15-78-20(e) ("Nothing in this chapter is construed as a waiver of the state's

or political subdivision's immunity from suit in federal court under the Eleventh Amendment to the Constitution of the United States . . . .").

Similar to the argument that Plaintiff made with respect to Union County's alleged liability, *see supra* section I., Plaintiff argues that Taylor is not entitled to Eleventh Amendment immunity because in addition to serving as Union County Sheriff he also serves as the Warden for the Union County Detention Center and also because the female officer who was at the scene of the stop and who actually conducted the strip search was his employee.[4] The court is not persuaded by Plaintiff's arguments.

First, as Taylor attests in his affidavit, he is "*as Sheriff* . . . in charge of the jail." [Doc. 52-2, at p. 2, ¶ 2] (emphasis added). As for his employee, Taylor states that "[t]he female officer, who was sent to the scene at the request of the Jonesville Police Department, was a correctional officer employee of the Sheriff's Department." [Doc. 52-2, at p. 2, ¶ 2]. Plaintiff has pointed to no South Carolina law that holds that a sheriff who also administers a jail is not necessarily serving in his official position as sheriff. Moreover, the court notes that in her Amended Complaint, Plaintiff has sued Taylor as the "duly elected Sheriff of the County of Union, State of South Carolina and was so at all times hereinafter mentioned and did control certain deputies under his supervision as mentioned herein." [Doc. 34, at p. 1, ¶2]. Thus, Plaintiff's allegation reveals that Plaintiff sued Taylor in his capacity as a sheriff and not in his capacity as a warden or administrator of the county jail. And the instant facts reveal that at no point during the traffic stop was Plaintiff placed under arrest or even incarcerated in a Union County facility. For these reasons, Plaintiff's attempt to overcome Taylor's Eleventh Amendment immunity by asserting that Taylor is not an officer of the state when serving in his

---

[4] The female officer who conducted the strip search at the scene of the traffic stop is not named as a party to this suit.

capacity as administrator of the Union County jail is unpersuasive. Taylor is therefore entitled to Eleventh Amendment immunity, and the court need not address the merits of Plaintiff's remaining claims against him. Accordingly, Taylor's Motion for Summary Judgment [Doc. 52] is granted.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED**. [Doc. 52].

**IT IS SO ORDERED.**

s/J. Michelle Childs<br>
United States District Judge

August 26, 2011<br>
Greenville, South Carolina